2004 UT App 252

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lew ISON, Defendant and Appellant.**

**No. 991030–CA.**

Court of Appeals of Utah.

July 22, 2004.

Kent R. Hart, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, Brett J. Delporto, and Charlene Barlow, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, GREENWOOD, and JACKSON.

OPINION

GREENWOOD, Judge:

¶ 1 Defendant Lew Ison appeals from a conviction of two counts of communications fraud, a third degree felony, in violation of Utah Code Annotated section 76–10–1801 (2003).[1] Defendant argues that his conviction should be reversed because he had ineffective assistance of counsel at trial and because the evidence presented at trial was insufficient to support his conviction. We reverse and remand for a new trial.

BACKGROUND

¶ 2 In 1994, Aristocrat Travel (Aristocrat), a travel agency located in Bountiful, Utah, entered into an agreement with Norwegian Cruise Lines (NCL) to sell sixty-six two-person cabins for a cruise scheduled to depart on November 26, 1995 (the November Cruise). Under the terms of the agreement, Aristocrat was required to periodically collect payments from each of the passengers and forward these payments to NCL by specified dates, with the final payment being due by September 25, 1995. However, unless passengers paid by credit card, NCL left the recording of the individual passenger names to Aristocrat. The cruise prices that NCL quoted to Aristocrat included a travel agency commission of seventeen percent. However, Aristocrat's owner, LeMar Lee Fiet, opted for a lower commission so that he could offer the cruise for less than NCL's quoted prices and attract more passengers to the cruise.

¶ 3 On August 21, 1995, Defendant, who at the time owned Continental Travel (Continental), entered into an agreement with Fiet to purchase several of Aristocrat's cruise bookings, including the November Cruise. The purchase agreement stated in part that: "On confirmation by Buyer [ (Defendant) ] that all cruise and tour deposits have been paid to the cruise lines, tour operators or received by Buyer, Buyer assumes all responsibility for the cruise and tour bookings transferred to Buyer." The agreed upon sales price was $60,000, with $10,000 being due immediately.

¶ 4 Consequently, Defendant immediately issued two checks to Aristocrat, one for $7000, and the other for $3000. However, Defendant put a stop payment on the $3000 check once he learned that Fiet had failed to pay Aristocrat's phone bill.

¶ 5 On or about September 25, 1995, the date the final payment for the November Cruise was due to NCL, John Lofthouse, an Aristocrat employee, informed Defendant that Defendant "need[ed] 'X' more dollars to get the cruise documents." This statement was apparently in response to an accounting that Defendant had asked Lofthouse to prepare so that Defendant could determine the exact amount of the deposits that Aristocrat had forwarded to NCL for the November Cruise. However, it is unclear from Lofthouse's accounting what amount needed to be forwarded to NCL in order to obtain the cruise documents.

¶ 6 On September 27, 1995, Defendant sent a letter to Fiet informing him that Fiet had "apparently personally taken possession and disposed of approximately $13,000.00 in deposits made by 126 people who [he had] booked on [the November Cruise]." Defendant stated that, consequently, he did not intend to perform on the agreement with Fiet.

¶ 7 To make up the payment shortages that he believed existed, Defendant decided to enter into a new agreement with the cruise passengers. Using Lofthouse's accounting, which was based on NCL's full listed price rather than the price Fiet had originally quoted the passengers, Defendant determined that those passengers whom he was able to determine had paid Fiet's quoted price in full, owed an additional $115, while those passengers whom he could not confirm had paid, owed the full cruise fare. Defendant then mailed the passengers a letter, which stated in part:

As you are aware, Aristocrat Travel is out of business. All contracts, quotes, and commitments of Aristocrat Travel are null and void. Some of the monies that were paid to Aristocrat Travel were not for-

1. Because Utah Code Annotated section 76–10–1801 has not been amended since Defendant was charged, we cite to the most recent version of the statute..

warded to Norwegian Cruise Lines. Some of the prices quoted to you by Aristocrat Travel were not accurate.

Norwegian Cruise Lines will not release any cruise documents to Continental Travel until all funds due Norwegian Cruise Lines have been received by Norwegian Cruise Lines. Currently a deficit of $230.00[ [2] ] is due 20 October, 1995, in order to complete payment of the cruise and secure documents for your cabin.

¶ 8 A week later, Defendant apparently sent the passengers another letter informing them "that Fiet/Aristocrat ha[d] not remitted the funds paid by some of the travelers on the [November Cruise] to NCL" and that "there [was] a significant shortage which need[ed] to be made up." According to Defendant, if the shortage was "not made up, NCL [would] cancel the cruise for the entire group and no one [would] go, regardless of whether they [had] paid the full fare or not." Defendant further advised the passengers that "[h]aving rescinded the Agreement with Aristocrat, Continental [would] not assume liability for Aristocrat's actions in failing to remit the monies for said cruise," but that "if the groups want[ed] to enter into a separate agreement with Continental to 'take over' the situation, and [would be] willing to be bound by Continental's handling of the problem, the situation [could] likely be resolved."

¶ 9 In response to a call from one of the cruise passengers, the Utah Attorney General's office initiated an investigation of Continental's activities. In addition, the Utah Commerce Department's Division of Consumer Protection held a hearing in response to numerous complaints it had received from passengers who were booked on the November Cruise. The purpose of the hearing was to determine whether Defendant had violated Utah Code Annotated section 13–11–4(2) [3] and Utah Code Annotated section 13–11–3(6).[4] The Administrative Law Judge (ALJ) who conducted the hearing concluded that Defendant had not violated either of the statutes in part because Defendant "made no misrepresentation to any passenger" and "never provided confirmation to Aristocrat that a full and accurate accounting of tour and cruise deposits existed as to then be held responsible for those bookings."

¶ 10 On September 30, 1997, the State charged Defendant with two counts of communications fraud in violation of Utah Code Annotated section 76–10–1801 (2003) and Defendant was tried two years later. During jury deliberations, the jury sent a note to the trial court referencing the purchase agreement between Defendant and Fiet. The note questioned whether "this [was] a legal and binding contract during the time of the alledged [sic] offense." In response, the trial court wrote the answer "yes" on the note and signed it.

¶ 11 Following jury deliberations, Defendant was convicted of both counts. The trial court subsequently sentenced Defendant to two terms of zero-to-five years, suspended both terms, placed Defendant on thirty-six months probation, and ordered him to serve thirty days in jail. The trial court also im-

---

**2.** This figure varied according to how much Defendant determined each passenger owed.

**3.** Utah Code Annotated section 13–11–4(2) (2001) provides, in part, that

a supplier commits a deceptive act or practice if the supplier knowingly or intentionally:

. . . .

(j) indicates that a consumer transaction involves or does not involve a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies, or obligations, if the representation is false;

. . . .

(*l*) after receipt of payment for goods or services, fails to ship the goods or furnish the services within the time advertised or otherwise represented . . . unless within the applicable time period the supplier provides the buyer with the option to either cancel the sales agreement and receive a refund of all previous payments to the supplier. . . .

The Administrative Law Judge did not indicate which version of the statute Defendant had been charged with violating. However, no significant amendments have been made to the statute since 1995.

**4.** Utah Code Annotated section 13–11–3(6) (2001) defines a supplier as "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." The Administrative Law Judge did not indicate which version of the statute Defendant had been charged with violating. However, no significant amendments have been made to the statute since 1995.

posed a fine and ordered Defendant to pay restitution. Defendant timely filed his notice of appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 12 Defendant argues that his conviction should be reversed because his trial counsel was ineffective.[5] "Ineffective assistance of counsel claims are reviewed on appeal as a matter of law." *State v. Bradley*, 2002 UT App 348, ¶ 15, 57 P.3d 1139.

## ANALYSIS

¶ 13 Defendant argues that his trial counsel was ineffective because he (1) failed to move to admit the ALJ's findings into evidence; (2) failed to object to the trial court's jury instruction stating that the purchase agreement between Defendant and Fiet was a legally binding contract; (3) did not object to the prosecutor's remarks during closing argument about Defendant's failure to call one of NCL's employees as a witness; (4) did not ensure that Defendant was present when the trial court responded to the jury's question; and (5) did not challenge the trial court's restitution award.

¶ 14 To demonstrate ineffective assistance of counsel,

a defendant must (i) identify specific acts or omissions by counsel that fall below the standard of reasonable professional assistance when considered at the time of the act or omission and under all attendant circumstances, and (ii) demonstrate that counsel's error prejudiced the defendant, i.e., that but for the error, there is a reasonable probability that the verdict would have been more favorable to the defendant.

---

**5.** Because of our resolution on this issue, we do not address Defendant's claim of insufficient evidence.

**6.** We also note that federal courts that have considered this issue have held that an ALJ decision, encompassing findings of fact entered after an evidentiary hearing, is admissible under rule 803(8)(C) of the Federal Rules of Evidence, which contains identical language to rule 803(8)(C) of the Utah Rules of Evidence. *See, e.g., Zeus Enters. v. Alphin Aircraft, Inc.*, 190 F.3d

*State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993).

### I. The ALJ's Findings

¶ 15 Defendant argues that his trial counsel was ineffective because he failed to move to admit the ALJ's findings that Defendant "made no misrepresentations to any passenger" and never "assume[d] responsibility for the cruise and tour bookings in question." According to Defendant, this evidence was admissible under the Utah Rules of Evidence. We agree.

¶ 16 Utah Rule of Evidence 803(8) allows for the admission of

[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Although no Utah court has directly addressed whether an ALJ decision is admissible under rule 803(8)(C), the plain language of the rule allows for such an admission. The ALJ's decision was a report of a public agency, contained factual findings resulting from an investigation, and would have been offered against the government in this criminal case.[6] Therefore, the ALJ's decision would have been admissible under rule 803(8)(C).

¶ 17 The State maintains that "administrative proceedings ... rarely, if ever, preclude relitigation of facts or issues during subsequent criminal proceedings." However, the State's argument is unavailing because Defendant does not claim that the ALJ's deci-

---

238, 243 (4th Cir.1999) (holding findings of National Transportation Safety Board ALJ admissible under rule 803(8)(C)); *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 96 (2d Cir.1994) (holding findings of New York Department of Labor ALJ in unemployment benefits hearing admissible under rule 803(8)(C)); *Virgin Islands v. Petersen*, 131 F.Supp.2d 707, 712 (D.Vi.2001) (holding FBI toxicology report analyzing victim's blood samples admissible against the Government under rule 803(8)(C)).

sion should have any preclusive effect, only that it was relevant exculpatory evidence.

¶ 18 The State also maintains that the ALJ's findings were inadmissible under rule 403 of the Utah Rules of Evidence because the findings had little probative value and had the potential to confuse or mislead the jury. This argument is similarly unpersuasive. "[T]he appraisal of the probative and prejudicial value of evidence under rule 403 is generally entrusted to the sound discretion of the trial judge...." *State v. Featherson,* 781 P.2d 424, 431 (Utah 1989) (quotations and citation omitted). Therefore, on appeal, we cannot say that the ALJ's findings would not have been admissible under rule 403, when this evidence was never considered by the trial court.

¶ 19 Based on the foregoing, we conclude that Defendant has demonstrated that his trial counsel's failure to move to admit the ALJ's decision amounted to an omission that fell "below the standard of reasonable professional assistance." *State v. Dunn,* 850 P.2d 1201, 1225 (Utah 1993). Trial counsel was aware of the ALJ decision, which appears in the record, and because it would have helped exonerate Defendant, there was no strategic reason for not moving for its admission. Moreover, because the ALJ's findings constituted exculpatory evidence, we conclude that Defendant was prejudiced by this omission. Accordingly, we hold that Defendant's trial counsel was ineffective for failing to move to admit the findings of the ALJ.

## II. The Trial Court's Response to the Jury Question

■ ¶ 20 Defendant also claims his trial counsel was ineffective for failing to object to the trial court's statement to the jury that the purchase agreement between Defendant and Fiet was "legal and binding." According to Defendant, the purchase agreement was not binding because Fiet's failure to provide confirmation that the cruise deposits had been paid (as per the purchase agreement) constituted the failure of a condition precedent, thereby relieving Defendant of any obligation to perform under the agreement. In response, the State argues that Defendant could not rescind the contract without first submitting the matter to mediation, as required by the contract.[7]

■ ¶ 21 "The issue of whether a contract exists may present questions of both law and fact. Whether a contract has been formed is ultimately a conclusion of law, but that ordinarily depends on the resolution of subsidiary issues of fact." *Nunley v. Westates Casing Servs., Inc.,* 1999 UT 100, ¶ 17, 989 P.2d 1077. It appears that the purchase agreement between Defendant and Fiet constituted a contract. However, no evidence was presented at trial, nor was there a determination by the trial court, as to whether Defendant had an obligation to perform under the contract once it was clear that he had failed to receive confirmation that Aristocrat had forwarded the passengers's deposits to NCL.[8] Moreover, no evidence was presented regarding Defendant's obligations under the agreement. Therefore, we conclude that the trial court erred when it instructed the jury that the purchase agreement was "legal and binding." Accordingly, we conclude that Defendant's trial counsel's failure to object to the trial court's instruction constituted an omission that fell "below the standard of reasonable professional assistance." *Dunn,* 850 P.2d at 1225.

¶ 22 We also conclude that Defendant was prejudiced by the trial court's instruction to the jury that the purchase agreement was "legal and binding." Defendant advised the cruise passengers that he had rescinded the agreement with Aristocrat and that therefore he had no obligation to assume responsibility for Aristocrat's failure to forward all of the deposits to NCL or to honor the prices that

---

7. The State also argues that this court should not address Defendant's argument because there is no record of his trial counsel's failure to object to the jury instruction. We reject this argument because it would have been impossible for Defendant to document on appeal his trial counsel's failure to object, when the trial court responded to the jury's question off the record.

8. As noted earlier, the purchase agreement stated, in part, that: "On confirmation by Buyer that all cruise and tour deposits have been paid to the cruise lines, tour operators or received by Buyer, Buyer assumes all responsibility for the cruise and tour bookings transferred to Buyer."

Aristocrat had originally quoted. Whether this representation was accurate depended on whether Defendant was bound by the purchase agreement. Therefore, Defendant was prejudiced when the trial court instructed the jury that the purchase agreement was "legal and binding." Accordingly, we hold that Defendant's trial counsel was ineffective for failing to object to that instruction.

## CONCLUSION

¶ 23 Defendant's trial counsel was ineffective for failing to move to admit the decision of the ALJ because the decision contained exculpatory evidence and was admissible under rule 803(8)(C) of the Utah Rules of Evidence. Defendant's trial counsel was also ineffective for failing to object to the trial court's instruction to the jury that the purchase agreement between Defendant and Fiet was "legal and binding." [9] Therefore, we reverse and remand for a new trial.

¶ 24 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and NORMAN H. JACKSON, Judge.

9. Our determination makes it unnecessary to consider Defendant's other arguments regarding ineffective assistance of counsel.