HARRIS, Judge:
¶1 Gary Jamieson downloaded, without authorization, over 1,400 of his boss's emails and disseminated them to outside parties. He later pled guilty to "computer crimes" as a class A misdemeanor. See Utah Code Ann. § 76-6-703(1) (LexisNexis Supp. 2017). The State sought restitution on behalf of his employer (Company), the victim of the crime. After holding a hearing, the district court calculated complete restitution in the amount of $120,378.27, a figure representing, in large part, the estimated value of time spent by Company officials dealing with the aftereffects of the email download.
¶2 Jamieson appeals from the restitution order, and asks us to consider two arguments.[1] First, he argues that the district *562 court improperly included in its restitution figure at least some amount for time spent by Company employees while participating in the criminal case (e.g., attending hearings). Jamieson did not raise this argument below, but contends that the district court plainly erred by including any such amounts in its calculation. Second, Jamieson asserts that he received ineffective assistance of counsel because his attorney failed to take issue with the Company CEO's claim that he had devoted 553 hours to dealing with the email download.
¶3 We find Jamieson's arguments persuasive. Accordingly, we vacate the restitution order and remand the case to the district court for a new restitution hearing.
BACKGROUND
¶4 Jamieson was employed by Company as its chief engineer. In May 2011, Jamieson contacted another Company employee and requested access to the CEO's emails. At that time, the CEO was out of the country and was not reachable by phone. The employee gave Jamieson "remote access to [the CEO's] computer, bypassing the firewall, other network protections and password controls," thereby allowing Jamieson direct access to the CEO's computer. Jamieson had full access to the CEO's computer for about twenty minutes, and in that time period Jamieson printed out several hard-copy files and downloaded many of the CEO's emails onto a thumb drive. In this fashion, Jamieson obtained "at least" 1,400 emails comprising some 2,000 printed pages. The emails were "very confidential" and included information regarding employee compensation, pending business deals, plans to hire a competitor's employees, and communications with other industry professionals.
¶5 Later, Jamieson, believing that Company was involved in illegal activity, told the CEO that "I have your email[s], they're very damning, I'm going to take you down." Jamieson disseminated the emails to a federal government agency, federal law enforcement officials, and a local news organization. Company eventually fired Jamieson.
¶6 The State charged Jamieson with one felony count of "computer crimes." See Utah Code Ann. § 76-6-703(1).[2] Eventually, after plea negotiations, Jamieson pled guilty to one count of "computer crimes" as a class A misdemeanor.
¶7 After Jamieson pled guilty, the State sought a total of $164,609.77 in restitution. The bulk of this request was comprised of time spent by the Company's CEO. Indeed, the State asserted that the CEO had spent "553 hours (at minimum) ... reviewing printed emails, meeting with local & [federal] counsel, police investigators, & staff," and that the value of the CEO's time totaled $110,600. The State also sought $7,500 representing time spent by three other Company employees, including its vice-president.
¶8 The restitution hearing was scheduled and postponed several times. It was finally held in September 2015[3] and, at the hearing, the district court posed direct questions about the 553 hours that the CEO claimed to have spent, asking Company counsel to "[h]elp me understand the 553 hours." The Company's attorney proffered the testimony of the Company's CEO and vice-president as follows:
[T]he time that they had spent would probably fall into one of two pots. The time that was directly related to mitigating the damages and time that they'd spent dealing with the criminal process in general. Because we've been in court three or four times for this restitution hearing to be continued. So I asked them to allocate that .... What they responded to me was-their initial reaction was about 75 percent *563 of [their time] fell into the former pot and about 25 percent in the latter.
The CEO also indicated to the court that he "wished he would have kept better records related to the time he spent on those [charges]."
¶9 The court invited Jamieson's attorney to ask questions of the Company employees. Jamieson's attorney asked one specific question-whether the vice-president was a salaried employee-but otherwise declined to examine the Company employees whose time was at issue. Specifically, counsel did not take the opportunity to ask questions of the CEO about his claim that he had devoted 553 hours to this case.
¶10 A few weeks after the restitution hearing, the district court issued a written decision calculating "complete restitution" at $120,378.27, a figure that was comprised almost entirely of Company employees' time. The district court excluded attorney fees from the calculation, but did not make any attempt to separate out and exclude the Company employees' time spent attending to the criminal proceedings. The district court credited the CEO with spending 553 hours on the matter, and calculated the value of the CEO's time at $110,600, exactly as the State requested. Likewise, the district court granted the State's request, in its entirety, regarding the other employees' time, valuing that time at $7,500. After taking Jamieson's financial circumstances into account, the court ordered Jamieson to pay restitution in the amount of $90,000, acknowledging that "the complete restitution in this case is larger than the [c]ourt-ordered restitution."
¶11 In addition to the restitution order, the district court sentenced Jamieson to a term of 365 days in jail, with 335 days suspended. The court also imposed upon Jamieson a probationary term of thirty-six months, with the payment of court-ordered restitution as one of the conditions of probation.
ISSUES AND STANDARDS OF REVIEW
¶12 Neither of the arguments Jamieson raises on appeal were preserved in the district court. "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." State v. Johnson , 2017 UT 76, ¶ 15, --- P.3d ----. Jamieson asks us to consider his arguments on appeal under the plain error and ineffective assistance of counsel exceptions to the preservation requirement. See id. ¶ 19 (noting that plain error and ineffective assistance of counsel are exceptions to the preservation rule).
¶13 Jamieson argues, first, that the district court plainly erred by including in its restitution calculation monetary damages for time the CEO and vice-president spent related to the criminal litigation. Even where an issue is preserved below, "a reviewing court will not disturb a district court's [restitution] determination unless the court exceeds the authority prescribed by law or abuses its discretion." State v. Laycock , 2009 UT 53, ¶ 10, 214 P.3d 104. To the extent that the district court made legal determinations in connection with its restitution analysis, we review those legal determinations for correctness. See State v. Brooks , 908 P.2d 856, 858-59 (Utah 1995) (stating that "[t]he standard of review for a simple legal interpretation of a rule or statute is correctness"). To prevail under the plain error standard, Jamieson must demonstrate that (1) an error exists; (2) the error should have been obvious to the district court; and (3) the error harmed him, " 'i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant.' " State v. Bond , 2015 UT 88, ¶ 15, 361 P.3d 104 (quoting State v. Dunn , 850 P.2d 1201, 1208 (Utah 1993) ).
¶14 Second, Jamieson argues that his trial attorney was constitutionally ineffective for failing to challenge the amount of time the CEO allegedly spent addressing the aftereffects of the email download. A claim for ineffective assistance of counsel raised for the first time on appeal presents a question of law that we review for correctness. State v. Kozlov , 2012 UT App 114, ¶ 28, 276 P.3d 1207.
ANALYSIS
I
¶15 Jamieson first argues that the district court plainly erred by including in its *564 restitution calculation at least some amount of time spent by Company employees in addressing the criminal litigation. We agree.
¶16 The Crime Victims Restitution Act (the Act)[4] states that "[w]hen a defendant enters into a plea disposition or is convicted of criminal activity that has resulted in pecuniary damages, ... the court shall order that the defendant make restitution to victims." Utah Code Ann. § 77-38a-302(1) (LexisNexis Supp. 2017). The Act defines restitution as "full, partial, or nominal payment for pecuniary damages to a victim." Id. § 77-38a-102(11). At the time Jamieson pled guilty, the Act defined "pecuniary damages" as follows:
all demonstrable economic injury, whether or not yet incurred, including those which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities and includes ... lost earnings and medical expenses, but excludes punitive or exemplary damages and pain and suffering.
Id. § 77-38a-102(6) (LexisNexis 2015).[5]
¶17 There are two types of restitution: "complete restitution" and "court-ordered restitution." "Complete restitution" is "a calculation of the restitution necessary to compensate [a victim] for all losses caused." State v. Brown , 2014 UT 48, ¶ 21, 342 P.3d 239. "Court-ordered restitution" is "a subset of complete restitution that, among other things, takes into account the defendant's circumstances." Id. "Where facts do not provide a full evidentiary foundation" for a restitution calculation, "the court must base its determination on the best information available." Laycock , 2009 UT 53, ¶ 23, 214 P.3d 104 ; see also Utah Code Ann. § 77-38a-203(1)(c) ("The inability, failure, or refusal of the crime victim to provide all or part of the requested information shall result in the court determining restitution based on the best information available.").
¶18 Jamieson wisely does not dispute that a restitution award can include amounts intended to reimburse crime victims for time spent attempting to mitigate the deleterious effects of the crime visited upon them. See State v. Birkeland , 2011 UT App 227, ¶ 9, 258 P.3d 662 (stating that "[t]he value of labor necessitated by another's culpable conduct has been recognized as a form of economic injury that is amenable to inclusion in a restitution award"); Utah Code Ann. § 77-38a-102(6) ("lost earnings" are included as part of "pecuniary damages"). Instead, Jamieson points out that, at least under the law in effect at the time of the district court's restitution order, any time that Company employees spent attending to the criminal proceedings could not be included in a restitution order as a matter of law, see Brown , 2014 UT 48, ¶ 23, 342 P.3d 239, and argues as a factual matter that the district court's restitution order in this case improperly included at least some amount of time that falls into this category.
¶19 Jamieson's legal argument is correct. Our supreme court, in Brown , noted the "longstanding, well-settled rule" that "forecloses recovery of costs or expenses incurred in the maintenance of, or related to, litigation." Id. In that case, the victim asked the court to include in its restitution order $1,228 for lost wages and travel costs incurred by the victim and her mother to attend hearings "[d]uring the criminal proceedings." Id. ¶¶ 6-8. The district court denied the request, and the supreme court affirmed. The court cited the then-current statutory definition of "pecuniary damages" available as part of a restitution order, which, as noted, limited the damages to those "which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." Id. ¶ 22 (citing Utah Code section 77-38a-102(6) ). The court observed that the victim and her mother "would not be eligible to recover the lost wages or travel costs that were requested in this case" in the context of a "civil tort action against Brown arising out of his criminal activity." Id. ¶ 23.
*565 Accordingly, the court held that "the lost wages and expenses requested for [the victim] and her mother are not 'pecuniary damages' compensable as an element of restitution." Id. ¶ 24.
¶20 In response, the State acknowledges Brown , but asserts that its holding is limited to situations where a victim appears at a hearing voluntarily, and does not apply when a crime victim is compelled by subpoena to participate in the criminal proceeding. In support of this argument, the State points to the Brown court's reliance on section 914 of the Restatement (Second) of Torts. That Restatement section sets forth the general rule that expenses incurred in maintenance of litigation are not recoverable, but in its second subsection it provides an exception for "attorney fees, experts, and loss of time incurred in bringing or defending a suit against a third party in order to protect one's interests as a result of the tortfeasors' actions." Restatement (Second) of Torts § 914 (Am. Law Inst. 1979) (cited in Brown , 2014 UT 48, ¶ 23, 342 P.3d 239 ). On the facts of this case, the State's reliance on this Restatement provision is misplaced.
¶21 The full text of the relevant subsection of that Restatement provision reads as follows:
One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.
Id. § 914(2). The comment to this subsection makes clear that this provision applies only if a prior tort (e.g., Jamieson's crimes) caused a person to become a party to a subsequent suit by or against a third party. "The rule stated in [subsection 914(2) ] applies when the preceding action was brought against the present plaintiff [ (e.g., Company) ] either by a third person or by the state, and also when the present plaintiff [ (Company) ] has been led by the defendant's tort [ (in this case, Jamieson's crime) ] to take legal proceedings against a third person." Id. cmt. b. The illustrations to the comment show that subsection 914(2) is applicable, in this context, only when the victim of a prior crime becomes embroiled in a subsequent suit as a result of a defendant's previous criminal actions. Here, no third party has brought any subsequent action against Company seeking damages for harm Jamieson caused, and Company has not instituted any such litigation itself. Thus, subsection 914(2) is inapplicable.
¶22 The State provides no additional support for its contention that the rule set forth in Brown -that crime victims and their families are not permitted to include in restitution awards time spent attending to the underlying criminal proceedings-should be varied in instances where a crime victim is compelled by subpoena to participate in the criminal case. We note that witnesses compelled to appear in court pursuant to subpoena are, at least nominally, compensated for their time, and although such fees often do not completely cover a witness's expenses, they do provide some level of reimbursement for a subpoenaed witness's time. See Utah Code Ann. § 78B-1-119(1)(a) (LexisNexis Supp. 2017) (mandating that witnesses "required ... to attend a trial court of record" are entitled to receive "$18.50 for the first day of attendance and $49 per day for each subsequent day of attendance"). Certainly, in a civil case arising out of Jamieson's crime, the question of whether Company would be allowed to recover for its own employees' time would not turn on whether or not those employees were compelled to appear by subpoena. In short, we are aware of no reason why a subpoenaed witness should be treated any differently than a non-subpoenaed witness for the purpose of calculating "pecuniary damages" for restitution.
¶23 We conclude, therefore, that the rule announced in Brown applies with equal force to witnesses compelled to participate in criminal proceedings pursuant to subpoena. Accordingly, any time that Company employees spent attending to the proceedings in the State's prosecution of Jamieson-regardless of whether they appeared pursuant to subpoena-is not compensable as restitution under the statute in effect at the time.
*566 ¶24 And as near as we can tell on this record, Jamieson's factual assertions-that the district court's restitution order includes at least some amount for time Company employees spent attending hearings in the criminal case-are correct as well. The only evidence before the district court was Company counsel's proffer that "about 75 percent" of the requested hours were spent "mitigating the damages" sustained by Jamieson's email download, and that "about 25 percent" of the requested hours were spent "dealing with the criminal process in general." It is not entirely clear from the record what is included in the latter "25 percent" category, but in the very next sentence following his description of that category, Company's attorney stated that this category was necessary "[b]ecause we've been in court three or four times for this restitution hearing to be continued." The clear inference-and perhaps the only inference-that must be drawn from this proffer is that the time Company employees spent attending hearings in the criminal case, including the oft-rescheduled restitution hearing, was included in the latter "25 percent" category.
¶25 It is, of course, not clear on this record whether all of the hours in the "25 percent" category were incurred attending court hearings or otherwise participating in the criminal case. But this question is beside the point. If even any of the time included in the "25 percent" category was time spent attending hearings in the criminal case, the calculation is erroneous. And it is clear that at least some time that falls in this category was indeed included. The district court did not undertake any analysis designed to ascertain how many of the hours that Company was requesting be included in the restitution order were hours spent attending to the criminal proceedings, and to then exclude those hours from the calculation. The district court's failure to undertake this analysis was error.
¶26 Here, however, because Jamieson failed to raise this issue below, Jamieson must show more than error-he must show that the error was plain. In order to succeed in that endeavor, Jamieson must also show that the error should have been obvious to the district court, and that he was truly harmed by the error. See Bond , 2015 UT 88, ¶ 15, 361 P.3d 104. We conclude that Jamieson has made the necessary showing.
¶27 "For an error to be obvious to the [district] court, the party arguing for the exception to preservation must show that the law governing the error was clear or plainly settled at the time the alleged error was made." Johnson , 2017 UT 76, ¶ 21, --- P.3d ---- (citations and internal quotation marks omitted). In this case, the relevant rule had been articulated by our supreme court in Brown over a year before the district court entered its restitution order. See Brown , 2014 UT 48, ¶ 23, 342 P.3d 239. Indeed, the district court was clearly aware of Brown : in its written decision calculating the restitution amount, the court not only cited to Brown , it cited to the very paragraph in Brown where the rule is found.
¶28 And Jamieson was clearly harmed by the inclusion, in calculation of complete restitution, of amounts reimbursing Company for time its employees spent attending to the criminal proceedings: he is now liable for at least some amount of complete restitution that should not have been awarded. If the district court had undertaken the analysis required by Brown , it would have reduced its complete restitution order by whatever amount it determined represented time spent by Company employees attending hearings or otherwise participating in the criminal case. Because a restitution order was imposed upon Jamieson that was higher than it should have been, Jamieson was clearly harmed.[6]
¶29 Accordingly, Jamieson has succeeded in demonstrating that the district court plainly erred by including at least some improper amounts in its restitution order.
*567 II
¶30 Jamieson next argues that his trial counsel was constitutionally ineffective for failing to challenge the State's assertion that the Company's CEO had spent 553 hours attempting to address the email download. We agree with this argument as well.
¶31 The Sixth Amendment to the United States Constitution provides that criminal defendants are entitled "to have the Assistance of Counsel for [their] defence." U.S. Const. amend. VI. A criminal defendant's right to effective assistance applies to privately retained counsel, Cuyler v. Sullivan , 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and applies at all critical stages of a criminal proceeding, including restitution hearings where restitution is ordered as part of a sentence that includes actual or suspended jail time, State v. Cabrera , 2007 UT App 194, ¶¶ 11-14, 163 P.3d 707. Here, the district court sentenced Jamieson to a term of 365 days in jail, with 335 days suspended. Because the district court sentenced Jamieson to actual as well as suspended jail time, he was entitled to effective assistance of counsel at the restitution hearing. Id.
¶32 To establish that his trial counsel was constitutionally ineffective, Jamieson must establish that (1) counsel's performance was objectively deficient, and (2) there exists a reasonable probability that, but for counsel's deficient performance, Jamieson would have obtained a more favorable outcome. State v. Ott , 2010 UT 1, ¶ 22, 247 P.3d 344. To establish counsel's deficient performance, Jamieson must demonstrate that there was no conceivable tactical basis for counsel's actions. State v. King , 2010 UT App 396, ¶ 31, 248 P.3d 984 (stating that "before we will reverse a conviction based on ineffective assistance of counsel, we must be persuaded that there was a lack of any conceivable tactical basis for counsel's actions" (citation and internal quotation marks omitted)). To establish that Jamieson would have obtained a more favorable outcome, Jamieson must show "that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " State v. Beckstrom , 2013 UT App 186, ¶ 13, 307 P.3d 677 (quoting Strickland v. Washington , 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ).
¶33 In certain circumstances, there can be valid tactical reasons for counsel to decide not to challenge the State's requested restitution amount. For instance, counsel might believe that the requested amount is quite reasonable, and that challenging the requested amount could expose the defendant to the risk that the court might order an amount even higher than the amount the State requests. See, e.g. , State v. Daniels , 2014 UT App 230, ¶ 10, 336 P.3d 1074 (determining that counsel had a valid tactical reason for stipulating to a certain restitution amount, because "counsel might very reasonably have concluded that his client risked restitution liability in excess of" the stipulated amount). Alternatively, where restitution is computed before (or contemporaneously with) sentencing, counsel might believe that challenging the requested restitution amount may exhibit a lack of contrition by the defendant, which could cause a sentencing judge to impose a harsher sentence or higher court-ordered restitution amount. See , e.g. , State v. Beckstrom , 2013 UT App 186, ¶ 15, 307 P.3d 677 (observing that stipulating to the amount of complete restitution put the defendant in a "contrite position" where she "might have had a better chance of convincing the judge to not impose the full amount of complete restitution as court-ordered restitution"); see also Daniels , 2014 UT App 230, ¶ 10, 336 P.3d 1074 (stating that "counsel may have thought that it might play well for [d]efendant to accept a restitution award in excess of the damages for which he admitted he was 'absolutely responsible' ").
¶34 In this case, however, neither of these tactical reasons existed. First, there is no evidence in the record to suggest that the district court would have had any basis to increase the number of hours above 553 had Jamieson's counsel questioned the CEO. The State's initial request for the CEO's time was 553 hours, and the State presented no evidence to support any higher figure. This case therefore differs from Daniels , where there was significant risk, based on a "revised damage estimate" as well as on the potential that the defendant would be asked to pay *568 restitution for damage caused by his co-defendants, that the defendant might be ordered to pay a higher restitution amount if he withdrew his stipulation to a certain amount. See Daniels , 2014 UT App 230, ¶¶ 4, 10, 336 P.3d 1074. Here, Jamieson was the only perpetrator, and neither the State nor Company ever asked for any figure higher than 553 hours for the CEO's time. There does not appear to have been any appreciable risk that a higher figure might have been imposed if counsel took the opportunity to question the CEO.
¶35 Second, there was no risk in this case that Jamieson might have been subject to a stiffer overall sentence if he had questioned the CEO, for the simple reason that the district court imposed sentence upon Jamieson minutes before considering restitution-related issues. Thus, at the time Jamieson's counsel had to decide whether or not to question the CEO, there was no risk that Jamieson might have been subject to additional jail time or more onerous probation conditions.
¶36 The only issue that remained open at the time the CEO's testimony was proffered was the restitution amount itself. As noted above, there was no appreciable risk of questioning resulting in a finding of more than 553 hours, since that was the entire amount the State asked for. The only risk that remained may have been a concern that the district court would view the questioning as a lack of contrition and impose a higher "court-ordered" restitution amount. But on the facts of this case, it is clear that defense counsel did not choose to employ a strategy of simply stipulating to the State's requested amount of complete restitution in hopes of appearing contrite. Instead, Jamieson and his counsel made the decision to contest the State's requested restitution amounts by arguing that Company "didn't lose any money" and "had no pecuniary loss." Thus, we need not speculate about whether defense counsel, in choosing not to question the CEO about the 553 hours, was attempting to further a strategy of attempting to appear contrite, when that is a strategy that counsel clearly chose not to adopt here.
¶37 In the end, we are unable to conceive of any valid tactical or strategic reason that Jamieson's attorney might have had for not questioning Company's CEO about his claim that he spent 553 hours attempting to address Jamieson's illegal email download. Accordingly, Jamieson's counsel was objectively deficient by not questioning the CEO about the 553 hours.[7]
¶38 And we are confident that the result of the restitution hearing would likely have been different if counsel had chosen to press the State and Company about the 553 hours. Here, the State based its restitution request on the CEO's unsupported assertion he made at a preliminary hearing that "on average [he] had spent an hour a day, even now, on this matter. That's going over a two-year period." These figures were estimates-not discrete facts corroborated through other credible evidence, such as logged time sheets. The CEO testified he "wish[ed] he could recall" specifically how much time he spent "dealing with the fallout from Mr. Jamieson's disclosures" and "wished he kept better records." While Company was under no obligation to log this information with meticulous detail, the evidence supporting the 553-hour figure was sketchy at best, and would likely have been fruitful ground for cross-examination. Indeed, the district court seemed intrigued by the seemingly high hours figure, twice asking the State and Company counsel to "help me understand" where the figure came from. The only "help" the court received *569 in answer to this question was a reference to a written exhibit stating that the 553 hours had been spent "reviewing printed emails, meeting with local [and federal] counsel, police investigators, and staff." There is a reasonable probability that the court would have reduced the number of hours if counsel had taken the opportunity to press the State and the CEO on the point.
¶39 In sum, Jamieson's trial counsel's performance was objectively deficient, and but for that deficient performance, Jamieson most likely would have received a better outcome. Therefore, his trial counsel provided constitutionally ineffective assistance. See State v. Ison , 2004 UT App 252, ¶ 14, 96 P.3d 374 (explaining that a defendant has received constitutionally ineffective assistance of counsel when an attorney's acts " 'fall below the standard of reasonable professional assistance' " and that " 'counsel's error prejudiced the defendant, i.e., that but for the error, there is a reasonable probability that the [outcome] would have been more favorable to the defendant' " (quoting State v. Dunn , 850 P.2d 1201, 1225 (Utah 1993) ); see also People v. Pangan , 213 Cal.App.4th 574, 152 Cal.Rptr.3d 632, 639 (2013) (concluding that trial counsel was ineffective for failing to challenge a restitution award based on the time value of money); State v. Hassan , 184 Wash.App. 140, 336 P.3d 99, 105 (2014) (concluding that trial counsel was ineffective for failing to object to the prosecution seeking a restitution award when "there was no evidence to support" the award and "there was no conceivable tactical reason not to object").)
CONCLUSION
¶40 We agree with Jamieson that the district court plainly erred in including in its restitution order at least some amount of time spent "in the maintenance of, or related to, litigation." We also agree with Jamieson that his trial counsel was ineffective for failing to challenge the 553 hours the CEO claimed to have spent mitigating damages.
¶41 Accordingly, we vacate the restitution order and remand the case to the district court to hold a new restitution hearing and to recalculate complete restitution (and, if necessary, court-ordered restitution) in a manner consistent with this opinion.

In his briefing on appeal, Jamieson raised a third argument: that his trial counsel was ineffective for failing to move to withdraw Jamieson's guilty plea after the district court had already sentenced him. In connection with this argument, Jamieson filed a motion for remand, pursuant to rule 23B of the Utah Rules of Appellate Procedure, asking this court to remand the case to the district court for additional factual findings on the issue. However, while this case was pending, the Utah Supreme Court issued its decision in State v. Rettig , 2017 UT 83, ---P.3d ----, in which the court upheld the constitutionality of Utah's plea withdrawal statute. Id. ¶ 13. That statute requires that "[a] request to withdraw a plea of guilty ... be made by motion before sentence is announced." Utah Code Ann. § 77-13-6(2)(b) (LexisNexis 2012). In light of the supreme court's decision in Rettig and the statute's plain mandate, Jamieson has since withdrawn this third argument as well as his related rule 23B motion.

The State also charged Jamieson with theft. On Jamieson's motion, the district court severed the theft charge from the other charges, and Jamieson later pled guilty to the theft charge in a separate case. That case is not at issue in this appeal.

The district court held the sentencing hearing and restitution hearing on the same day.

The Act, in its entirety, is codified at Utah Code Annotated sections 77-38a-101 to -601 (LexisNexis 2012 & Supp. 2017).

The Act's definition of "pecuniary damages" was amended in 2016 and now expressly includes "travel expenses reasonably incurred as a result of participation in criminal proceedings." See Utah Code Ann. § 77-38a-102(6) (LexisNexis Supp. 2017).

Jamieson correctly points out that he would still sustain harm from an inaccurate computation of complete restitution, even if the court-ordered restitution amount would remain unaffected by the inaccuracy. Under Utah law, even though a defendant is obligated as part of the criminal case to pay only court-ordered restitution, a defendant is liable civilly for payment of the (often higher) complete restitution amount. See Utah Code Ann. § 77-38a-401.

The State argues that "deficient performance is not established by merely showing there is no conceivable tactical basis for counsel's actions or omissions." This argument, however, is not supported by our case law. See , e.g. , State v. Clark , 2004 UT 25, ¶ 6, 89 P.3d 162 (noting that a defendant can establish deficient performance "by persuading the court that there was no conceivable tactical basis for counsel's actions" (citation and internal quotation marks omitted)); State v. Snyder , 860 P.2d 351, 359 (Utah App. 1993) (determining that counsel's performance was "objectively deficient" where "no legitimate trial tactic [could] be served" by counsel's decision, and concluding that "we fail to see how counsel's" decision "can be explained as a sound trial tactic or strategy"); State v. Craft , 2017 UT App 87, ¶ 27, 397 P.3d 889 (stating that "we can conceive of no strategic basis for counsel to have neglected" to make a particular motion, and therefore concluding that counsel's performance was objectively deficient).